# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM S. WOLLESEN, et. al., | |
| Plaintiffs, | No. 16-CV-4012-MWB |
| vs. | **ORDER** |
| WEST CENTRAL COOPERATIVE, et. al., | |
| Defendants. | |

This matter comes before the Court on two motions: (1) plaintiff Iowa Plains Farms' ("Iowa Plains") Motion to Compel Against defendants West Central Cooperative, WestCo Agronomy Company, LLC, and Farmers Cooperative Company d/b/a Landus Cooperative (collectively "West Central defendants") and defendants Wixted Pope Nora Thompson & Associates, LLC, Wixted, Inc., and Eileen Wixted (collectively "Wixted Pope defendants") (Doc. 169), and (2) Iowa Plains' Motion to Compel Against Wixted Pope defendants (Doc. 172).[1] The Wixted Pope defendants timely filed their resistance (Doc. 181) and the West Central defendants timely filed their resistance (Doc. 180) to Iowa Plains' first motion to compel (Doc. 169). Iowa Plains timely filed a single brief in response to both resistances. (Doc. 189; *see* Doc. 186 (granting Iowa Plains an extension of time to file its reply brief)). The Wixted Pope defendants also timely filed their resistance to Iowa Plains' second motion to compel (Doc. 172). Doc. 182. Iowa Plains timely filed its reply brief. (Doc. 191; *see* Doc. 186 (granting Iowa Plains an

---

[1] On December 22, 2017, Iowa Plains filed its First Motion to Compel Against the Gardiner Thomsen Defendants. (Doc. 194). This motion is not contemplated in this Order, and the Court reserves ruling on this motion.

extension of time to file its reply brief)). The Court entertained oral argument on these motions on December 28, 2017 (Doc. 196).[2]

For the following reasons, Iowa Plains' Motion to Compel Against West Central and Wixted Pope (Doc. 169) is **granted in part and denied in part** and Iowa Plains' Motion to Compel Against Wixted Pope (Doc. 172) is **granted in part and ruling is reserved in part.**

## I. BACKGROUND

The factual history of this case is complex and need not be recounted in full for purposes of the instant motions. The Court recognizes that the following synopsis eliminates many details, however, in the interest of brevity, the facts are as follows:[3]

Plaintiffs allege that defendants conspired "to hide and conceal the known fraudulent conduct of Chad A. Hartzler." Doc. 64 at 2. This conspiracy, plaintiffs allege, involved devising a story in which plaintiffs and Hartzler, together, engaged in fraudulent and illegal conduct. Doc. 64. Subsequently, in an attempt to lessen the repercussions of their own wrongful conduct, certain defendants used plaintiffs as a scapegoat. *Id.* at 2. As a result, plaintiffs plead damages in excess of $6 million. *Id.* at 4.

---

[2] Although the Honorable C.J. Williams, Chief United States Magistrate Judge, presided over the hearing, the case was reassigned to the Honorable Kelly K.E. Mahoney, United States Magistrate Judge, upon Judge Williams' recusal. (*See* Doc. 199). The undersigned became fully apprised of the case and present motions prior to issuing this order and, further, finds that lacking the benefit of oral argument on the instant motions did not place her or the parties at a disadvantage in rendering a decision.

[3] Because the instant motions are *plaintiffs'* motions to compel and because relevancy is raised as an issue, the facts set forth are taken from plaintiffs' Second Amended Verified Complaint and Jury Demand (Doc. 64), unless otherwise stated. The Court is neither affirming nor disaffirming any facts set forth in this section. This section is merely meant to provide a recitation of facts, as plaintiffs claim them, to establish the background of the case and to ascertain which facts may be relevant to plaintiffs' claims.

Plaintiffs began purchasing agronomy products from West Central, a collection of farming companies and their shareholders, on a prepay basis in February 2002. *Id.* at 14. On June 25, 2007, Iowa Plains Farms became a shareholder of West Central Cooperative ("West Central"). *Id.* at 23. Hartzler began working for West Central in July 2002; plaintiffs claim that Hartzler's objective was "to increase West Central's sales and to improve its competitive position in the agronomy industry" by increasing West Central's agronomy sales. *Id.* at 14. In February 2003, Hartzler allegedly began stealing seedcorn from West Central and misappropriating it for personal profit. *Id.* at 17. Although the exact facts of the multiple alleged misappropriations were varied, plaintiffs claim that the bulk of these misappropriations involved Hartzler stealing seedcorn from West Central and selling it to unknowing West Central customers, who paid Hartzler directly and personally for the seedcorn. *Id.* In this manner, Hartzler realized a personal profit on the stolen product.

In 2005, Hartzler was assigned to handle plaintiffs' accounts with West Central. *Id.* at 18. During plaintiffs' first meeting with Hartzler, Hartzler informed plaintiffs "that he received product from manufacturers that he could sell for his own benefit (*a.k.a.* 'rep. material')." *Id.* This statement was not true. *Id.* at 18-19. From 2005 through 2010, Hartzler sold this "rep. material" to plaintiffs, who paid Hartzler directly and personally. *Id.* at 19. Instead of lawfully acquiring the product, Hartzler was stealing the product from West Central and selling it to plaintiffs for personal gain. *Id.* Plaintiffs allege that they had no reason to suspect any illicit activity. *Id.*

To conceal his fraudulent conduct, plaintiffs claim Hartzler engaged in a practice known as "lapping," in which Hartzler would sell the stolen product to plaintiffs for a personal profit, then enter a receivable on Iowa Plains' book with West Central. *Id.* at 29. Thus, Iowa Plains paid Hartzler directly for the product and was also billed for the same product by West Central. *Id.* Plaintiffs, however, were unaware that they were billed twice and only had knowledge of the payment made directly to Hartzler. *Id.* Iowa Plains did not pay West Central for the product provided by Hartzler and for which

Hartzler personally received payment. *Id*. As a result, an ever-increasing deficit in Iowa Plains' name was created on West Central's books. *Id*. To conceal the deficit, Hartzler solicited increasing payments from plaintiffs each year; while a portion of the payment went to Hartzler directly, a portion was applied to the deficit on West Central's books. *Id*. This scheme resulted in a greater deficit being created each time Hartzler misappropriated product and sold it to plaintiffs for personal gain. *See id*.

Plaintiffs allege that because Iowa Plains expressly declined to open a credit line with West Central, West Central should have become aware of Hartzler's conduct at the time the deficit first appeared on the books, but instead permitted Hartzler's conduct to continue. *Id*. at 29-30. Plaintiffs further argue that West Central became aware of Hartzler's fraudulent conduct in 2007 and, in no case, could West Central have become aware of the fraudulent conduct any later than January 2009. *Id*. at 25-26.

On April 20, 2011, Hartzler submitted his resignation, in which he accepted full responsibility for the alleged malfeasance. *Id.* at 35. Plaintiffs believe that Hartzler's resignation was strategically planned to draw attention away from defendants' failure to act with respect to Hartzler's malfeasance. *Id*. Shortly thereafter, plaintiffs allege, in an attempt to cover up Hartzler's actions, certain defendants suggested to Hartzler that Hartzler had been bribed by plaintiffs; Hartzler adopted this suggestion and later gave a sworn statement to the effect that plaintiffs had bribed Hartzler. *Id.* at 35-36. Subsequently, certain defendants pursued a legal action against Iowa Plains Farms in Story County, Iowa. *Id.* at 37. That lawsuit (which was filed on May 12, 2011) resulted in a verdict in favor of the Wollesens and Iowa Plains Farms. *Westco Agronomy Co., LLC v. Wollesen*, No. LACV046817, 2014 WL 5389985 (Iowa Dist. Aug. 7, 2014). The Supreme Court of Iowa upheld the verdict as it pertained to the Wollesens. *Westco Agronomy Co., LLC v. Wollesen*, No. 15-0471, 2017 WL 6545853 (Iowa Dec. 22, 2017).

West Central retained Wixted Pope Nora Thompson & Associates, LLC ("Wixted Pope") to serve as West Central's public relations firm amidst the scandal involving Hartzler. *Id.* at 40. At some point, defendant Eileen Wixted was a business partner at

4

Wixted Pope. The Wixted Pope defendants actively attempted to promote a positive image for West Central. *Id*. at 40-41. West Central representatives allegedly delivered speeches crafted by the Wixted Pope defendants that were intended to restore and promote West Central's image by using the Wollesens as a scapegoat for both Hartzler's theft and other unrelated losses. *Id*. at 44. By turning the Wollesens into a scapegoat, the West Central defendants and the individual defendants were able to escape liability and accountability at the hands of West Central's shareholders. *Id*. Alicia Clancy, as West Central's Director of Communications, became involved in the "cover-up" scheme by making public statements relating to the scheme. *Id*. at 69. Alicia Clancy, notably, is not named as a defendant in this action.

## II. APPLICABLE LAW

Both motions currently under consideration by the Court are motions to compel and seek discovery that has been withheld based on objections for relevance, attorney-client privilege, and the work-product doctrine. Though each motion, resistance, and reply may present a distinct legal issue, the law common to both motions is set forth below.

### A. *Motion to Compel*

Federal Rule of Civil Procedure 37(a)(1) provides that a party moving to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *See also* LR 37(a). An exchange of written communications or a single telephone message will not, by itself, satisfy the requirements." LR 37(1). "The meet-and-confer requirement is not an empty formality." *Williams v. Cent. Transp. Int'l., Inc.*, No. 4:13-CV-2009 (CEJ), 2014 WL 6463306, at *2 (E.D. Mo. Nov. 17, 2014) (citation and internal quotation marks omitted).

5

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Rule 26 is "liberal in scope and interpretation" and extends to matters that "are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citation omitted). Whether the discovery sought would be admissible in evidence is inconsequential when considering a motion to compel discovery. *Id.* Thus, evidence that may be inadmissible may properly be discoverable. *Id.* "[T]here must be at least a 'threshold showing of relevance' before requiring a party to disclose 'information which does not reasonably bear upon the issues in the case.'" *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 309 F.R.D. 476, 479 (N.D. Iowa 2015). Once this showing is made, the burden shifts to the resisting party to show the requested information is not relevant for discovery. *Id.*

Federal Rules of Civil Procedure 33 and 34 state that objections to discovery requests must be stated with "specificity." Indeed, the Honorable Mark W. Bennett, United States District Judge, who is the District Judge presiding over the instant case, has admonished parties against "asserting boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. . . . without specifying how each interrogatory or request for production is deficient and without articulating the particular harm that would accrue if the responding party were required to respond to the proponent's discovery requests." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D.

168, 185 (N.D. Iowa 2017) (alteration in original) (citation and internal quotation marks omitted).

Discovery will not be permitted if responding to a specific request would be unduly burdensome, or if "harm to the person from whom discovery is sought outweighs the need to the person seeking discovery of the information." *Nachurs Alpine Solutions, Corp. v. Nutra-Flo Co.*, No. 15-CV-4015-LTS, 2017 WL 1380460, at *2 (N.D. Iowa Apr. 17, 2017); *see also* FED. R. CIV. P. 26(b)(1) (requiring discovery be proportional to the needs of the case). This Court has established several factors that may be considered in assessing whether responding to a discovery request would present an undue burden: 1) relevance of the requested information; 2) the party's need for the discovery; 3) the breadth of the discovery request; 4) the time period covered by the request; 5) the particularity with which the party describes the requested documents; and 6) the burden imposed. *Am. Broad. Cos., Inc. v. Aereo, Inc.*, No. 13-MC-0059, 2013 WL 5276124, at *7 (N.D. Iowa Sept. 17, 2013).

### B.     *Attorney-Client Privilege*

"The attorney[-]client privilege is based upon the principle 'that sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client.'" *PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship* (*PaineWebber*), 187 F.3d 988, 992 (8th Cir. 1999) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "'The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.'" *Upjohn*, 449 U.S. at 389 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)).

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced

7

> or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5)(A); *PaineWebber*, 187 F.3d at 992. The burden of proving that the attorney-client privilege applies lies with the party asserting the privilege. *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

"The attorney-client privilege extends only to confidential communications made for the purpose of facilitating the rendition of *legal* services to the client." *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (emphasis in original). Thus, where an attorney acts as a business advisor, the attorney-client privilege does not apply. *Id.* Likewise, if an attorney works with an outside agent to facilitate the resolution of issues collateral to the underlying legal matter, the privilege would not apply. *See id.* (providing that the attorney-client privilege *only* applies when in relation to the rendition of legal services; if an attorney is involved in other matters, those matters do not become privileged simply by involving an attorney).

### C. *Work-Product Doctrine*

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, . . . or agent)." FED. R. CIV. P. 26(b)(3)(A). When a party withholds otherwise discoverable information under the claim that the information is protected work product, that party must produce a privilege log describing the nature of the material not produced. FED. R. CIV. P. 26(b)(5)(A); *PaineWebber*, 187 F.3d at 992. As with the attorney-client privilege, the party asserting that the work product doctrine applies bears the burden of establishing that the protection does, in fact, apply. *Weil*, 647 F.2d at 25.

"The work[-]product privilege is distinct from and broader than the attorney-client privilege." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (citation and internal quotation marks omitted) (noting work-product privilege is based

on an "attorney's interest in protecting his opinions and thought processes from disclosure . . . [and] accords the attorney a measure of privacy within which he can candidly compose his thoughts.").

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of . . . other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

### III. DISCUSSION

Plaintiff Iowa Plains' two pending motions to compel (Docs. 169, 173) will be discussed in turn. The parties have met the "meet and confer" requirement with respect to each of these motions.

### A. *Motion to Compel Against West Central and Wixted Pope (Doc. 169)*

This motion seeks to compel the West Central defendants and the Wixted Pope defendants to produce certain documents that are currently being withheld as work product and/or attorney-client privileged material. The Court is tasked with determining whether the documents located at Bates Numbers 147-165, 1479-1522, 1524-1527, 1531-1547, 2623-2630, 2632-2639, WIX0243, WIX0245, WIX0247, WIX0251, WIX0252, and WIX 0286-321 are protected by either the work-product doctrine or attorney-client privilege. The documents were produced for *in camera* review pursuant to Court order and the Court conducted a thorough inspection of the subject documents. The Court recognizes that the defendants did not claim that both protections apply to every document; where only one protection is asserted, the Court has analyzed the document with respect to that protection.

9

The threshold issue for the Court's consideration is the purpose for which Wixted Pope was hired. West Central retained the Wilcox Law Firm to represent West Central in the underlying Story County action. The Wilcox Law Firm, in turn, retained Wixted Pope. Although Wixted Pope acted as an agent of the Wilcox Law Firm with respect to the underlying Story County action, the parties dispute why Wixted Pope was retained. If Wixted Pope provided services in aid of the litigation, those materials that were prepared in furtherance of Wixted Pope's objective will be protected work product.

Plaintiffs argue that Wixted Pope was retained by West Central's law firm to "'maintain stakeholder confidence' in the aftermath of the Hartzler theft, rather than [to] assist[ ] West Central's counsel with trial strategy in the Story County [a]ction." Doc. 169 at 2. Plaintiffs further assert that the subject "materials are not protected because they were not prepared to assist West Central's trial counsel in its trial strategy, but rather to control how the public perceived Hartzler's resignation and events in the [Story County action]." Doc. 169-1 at 3. Should this Court find that the materials are protected work product or are attorney-client privileged material, plaintiffs urge that these protections have been waived because the materials were provided to Wixted Pope, a public relations firm, for public dissemination.

West Central claims that "Wixted Pope's work for [West Central] related to managing the public relations relating to Hartzler and the Story County case" and that the subject documents are protected opinion work product and ordinary work product because "they reveal mental impressions of [West Central's] counsel[ ] and were otherwise created in anticipation of litigation." Doc. 180 at 3. West Central further argues that plaintiffs' argument of waiver is inapplicable because West Central has "only asserted a work product privilege over documents that were not meant for public disclosure or over incomplete drafts of documents that were later disclosed to the public." *Id*.

Finally, the Wixted Pope defendants state that Wixted Pope was retained "to provide communications assistance to West Central following West Central's discovery

10

of wrongdoing" and that the Wixted Pope defendants were not involved in the decision to file suit. Doc. 181 at 3. The Wixted Pope defendants go on to state, however, that "on limited occasion, West Central and its attorneys consulted with and discussed legal issues with the Wixted [Pope] defendants, before and after trial." *Id.* As such, the Wixted Pope defendants claim that the documents that have been withheld "involve confidential communications regarding legal issues or trial" and are, therefore, protected.[4] *Id.* at 4. The Wixted Pope defendants further refute plaintiffs' claim of waiver by submitting that plaintiffs' belief that the withheld documents are "public relations material" shows a misunderstanding of the contents of the documents. *Id.*

The Court finds that when Wixted Pope was first retained in May 2011, it was hired for the purpose of assisting West Central in communicating with its shareholders, employees, and the public at large. As the litigation progressed, however, Wixted Pope's role evolved. Wixted Pope began to take on tasks related to the litigation itself, including providing input on litigation strategy. Those documents pertaining to Wixted Pope's initial role will not be protected work product because they were not prepared in anticipation of litigation. Rather, those documents were created for a solely communicative purpose, separate from the underlying litigation. In reviewing the documents, the Court was mindful of the potential applicability of attorney-client privilege. Those documents created after Wixted Pope's role evolved, however, may be protected as work product because these documents could have been prepared in anticipation of litigation given Wixted Pope's new role regarding the litigation and litigation strategy.

The Court agrees that the withheld documents were not meant for public disclosure and were not disclosed to the public or a third party that would increase the likelihood of their public dissemination. Therefore, the Court declines to hold that defendants waived the protections of either the work-product doctrine or attorney-client privilege.

---

[4] This motion concerns those documents containing a Bates Number with the "WIX" designation.

Following a review of the subject documents, the Court finds that the following Bates-Numbered documents are not protected: 2623, 2624, and 2626-2633. The documents reflecting Bates Numbers WIX0243, WIX0245, WIX0247, WIX0251, and WIX0252 were redacted prior to production, and the Court finds that all redacted information is protected.

### B. *Motion to Compel Against the Wixted Pope Defendants (Doc. 172)*

This motion seeks to compel the Wixted Pope defendants to respond to Interrogatories Number 10, 13, and 18, as well as Request for Production Number 4. Doc. 172-1 at 4.[5]

As an initial matter, it is helpful to note that this motion deals with information requested of the Wixted Pope defendants as defendants *independent of West Central*. The importance of this distinction is that the requested discovery addresses the Wixted Pope defendants' own litigation in the instant case as opposed to addressing information obtained by virtue of the Wixted Pope defendants' relationship with West Central. Therefore, the attorney-client privilege may apply to those discovery materials requested in the instant motion because they pertain to the Wixted Pope defendants as *defendants* as opposed to as a public relations firm.[6]

#### 1. *Interrogatory Number 18*

**Interrogatory Number 18:** Identify and describe why Eileen Wixted is no longer a business partner with Mr. Ms. Pope [sic] and when, why and how that change occurred.

---

[5] The Court reserves ruling on the motion with respect to Interrogatories Number 10 and 13.

[6] This analysis is not intended as a determination of privilege with respect to the Motion to Compel Against West Central and Wixted Pope (Doc. 169). Rather, the Court finds it helpful to differentiate between the two motions. Regardless of whether the attorney-client privilege applies to the Motion to Compel Against West Central and Wixted Pope (Doc. 169), the privilege may apply to the instant motion.

> **Answer:** Defendant objects to this interrogatory as seeking irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, Defendant states that the principals of Wixted Pope Nora Thompson began operating independently and separately in approximately 2006 but did not take steps to correct the website or formally dissolve until 2017.

Doc. 172-4 at 9. The claims asserted against Wixted Pope are as follows: malicious prosecution (Count I); breach of fiduciary and other duties to West Central Cooperative and Westco (Count III); tortious interference with existing and prospective business relationships (Count V); breach of fiduciary and other duties owed to West Central (Count VI); and defamation (Count XII). Doc. 64. Plaintiffs also seek punitive damages. *Id.* Although the information sought may be relevant to claims asserted against other defendants, the Court finds it unnecessary to recount those other claims here.

Iowa Plains properly asserts that it, not Wixted Pope, defines the theory of its own case and that Wixted Pope may not unilaterally determine whether information is relevant. *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925-26 (8th Cir. 2014). Further, the scope of relevant discovery is broader than the scope of admissibility, as "discovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence, even if the evidence discovered is later deemed not admissible." *Id.* at 926. However, just as the Wixted Pope defendants may not simply deem evidence irrelevant, Iowa Plains may not simply assert that it may be relevant. *See Liguria Foods, Inc.*, 320 F.R.D. at 186-87. This would be nothing more than a "he said, she said" battle. Notably, the party resisting discovery bears the initial burden of showing that the discovery sought is irrelevant; the burden then shifts back to the requesting party to show that the discovery is relevant. *Hofer*, 981 F.2d at 380.

Further, counsel informed the Court that counsel was not made privy to the exact circumstances surrounding the decision to no longer operate as business partners. The Court sees two possibilities with respect to how the Wixted Pope defendants determined

that the requested information was irrelevant. First, the Wixted Pope defendants themselves could have informed counsel that the separation was due to differing business philosophies and that the separation was wholly unrelated to the instant litigation or the underlying events giving rise to this litigation. If this is the case, the Wixted Pope defendants' objection as to relevance would be based on a layperson's interpretation of relevance.[7] This would be problematic because a layperson's interpretation of relevance does not carry the same degree of reliability as an attorney's interpretation of relevance, nor is a layperson bound by the same professional conduct requirements as an attorney, including a duty of candor. As such, the Court is unwilling to accept a layperson's interpretation of relevance.

Second, the Wixted Pope defendants could have informed counsel only that the split was due to differing business philosophies. From there, counsel could have extrapolated that the "differing business philosophies" were unrelated to the instant litigation. Without knowledge of those differing business philosophies, however, counsel would have no way of determining that the business philosophies were truly unrelated to the instant litigation. For example, Ms. Wixted's partner could have disagreed with how Eileen Wixted conducted the project for West Central. This very well could give rise to a difference in business philosophies, but this difference would be relevant to the instant litigation given the claims asserted against the Wixted Pope defendants. Regardless of whether the first scenario or the second occurred when the Wixted Pope defendants were preparing their answers to the interrogatories, the Court cannot find that counsel had sufficient information to determine relevancy and, as shown above, relying on a layperson's interpretation of relevance would give rise to a host of additional issues.

The Wixted Pope defendants have failed to meet their burden of showing irrelevance. They provided a boilerplate objection in their answer to the interrogatory

---

[7] The Court has no reason to believe that any of the Wixted Pope defendants are licensed attorneys or have any legal training.

14

and further explained in their resistance that the principals of Wixted Pope Nora Thompson began operating independently in 2006 because of "different business philosophies." Doc. 182 at 6-7. This adds nothing to the discussion of why the principals formally split in 2017. As a result, the Court simply lacks the information to find that the Wixted Pope defendants have met their burden of showing irrelevance. Accordingly, the Wixted Pope defendants are directed to fully answer Interrogatory Number 18. The Wixted Pope defendants may, of course, seek to exclude from trial any evidence they believe is irrelevant by any appropriate means they deem necessary.

### 2. *Request for Production Number 4*

> **Request for Production Number 4:** The calendar, datebook, Outlook calendar and/or any similar items that show any or all of Eileen Wixted's professional appointments during the period from May 1, 2011 through September 30, 2011.
>
> **Response:** Defendant objects to this request as overly broad. Notwithstanding this objection, Defendant states that any meetings related to this litigation would be reflected in the materials previously produced. Defendant is in the process of searching Eileen Wixted's Outlook calendar and will supplement this response with any responsive materials if recovered.

Doc.172-5 at 2.

The materials requested in Request for Production Number 4 are not overly broad. Rather, the request targets a limited time period at the heart of plaintiffs' claims. It is highly unlikely that Ms. Wixted used an infinite number of means to document her professional appointments during this five-year period. Instead, it is likely that Ms. Wixted used a limited number of mechanisms to track her professional appointments— mechanisms she should be able to readily identify and which Iowa Plains likely cannot. As a result, this request is narrowly tailored.

However, the Wixted Pope defendants cannot produce that which does not exist. The Wixted Pope defendants have represented that the requested information is believed

15

to have been destroyed when the Wixted Pope defendants switched to a new computer system a number of years ago and that the switch and any resulting destruction were not done for any improper purpose. If the requested information does exist, the Wixted Pope defendants are directed to produce it to Iowa Plains. If, however, the information has been destroyed or is otherwise unavailable, the Wixted Pope defendants are directed to provide Iowa Plains with a sworn certification to that effect. As with any other alleged discovery violation, Iowa Plains is free to seek any relief it deems appropriate and proper.

## IV. CONCLUSION

Plaintiff Iowa Plains' motion to compel against the West Central defendants and Wixted Pope defendants (Doc. 169) is **granted in part and denied in part**. The West Central defendants **are directed** to produce the documents at Bates Numbers 2623, 2624, and 2626-2633 **by February 22, 2018**. The remaining documents (unredactd portions of the documents at Bates Numbers WIX0243, WIX0245, WIX0247, WIX0251, and WIX0252) need not be disclosed.

Plaintiff Iowa Plains' motion to compel against the Wixted Pope defendants (Doc. 172) is **granted in part** (as to Interrogatory Number 18 and Request for Production Number 4) and **ruling is reserved in part** (as to Interrogatories Number 10 and 13). The Wixted Pope Defendants are directed to fully answer Interrogatory Number 18 and respond to Request for Production Number 4 **by February 22, 2018**. The Court will issue a separate order on the remaining portions of the motion to compel (regarding Interrogatories Number 10 and 13).

**IT IS SO ORDERED** this 8th day of February, 2018.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa